UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BARBARA NELSON FLOOD,

                            Plaintiff,                    05 CV 5480 (SJ)

    - against -                                      MEMORANDUM
                                                      AND ORDER

GUARDIAN LIFE INSURANCE CO.,

                            Defendants.
----------------------------------------------------------X
A P P E A R A N C E S:

THOMAS F. BELLO, ESQ. P.C.
2 Green Street, 2nd Floor
Staten Island, N.Y. 10310
By:   Thomas F. Bello, Esq.
Attorney for Plaintiff

BLEAKLEY PLATT & SCHMIDT, LLP
One North Lexington Avenue
P.O. Box 5056
White Plains, New York 10602-5056
By:   ROBERT D. MEADE, Esq.
Attorney for Defendant


JOHNSON, Senior District Judge:

      Plaintiff Barbara Nelson-Flood ("Plaintiff") brings this action under the

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"),

challenging the denial of long-term disability benefits under her employer's benefit plan.

Defendant Guardian Life Insurance Co. ("Defendant" or "the Plan"), brings the current

motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) ("Rule

1

56"). For the following reasons, the Defendant's motion is GRANTED.

## BACKGROUND

Defendants offer an employee benefit plan ("the Plan"), established pursuant to the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.* ("LMRA"), and which manages the benefit plan for Fitch, IBCA, Inc. ("Fitch"), the Plaintiff's employer. See Aff. in Supp. of Def.['s] Mot. for Summ. J. ("Def.'s Aff."). The Plan published a Summary Plan Description ("SPD") of the benefit plan which was distributed to Fitch employees. See Def. Aff. Ex. A. In a section entitled "General Provisions," the SPD states that "['a]ccident and health' means any dental, dismemberment, hospital, *long term disability*, major medical, out-of-network point of service, prescription drugs, surgical, vision care or weekly loss-of-time insurance provided by this plan" (emphasis added). Id. at Ex. A. In a subsection entitled "Accident and Health Claim Provisions," the SPD states:

> "Your right to make a claim for any accident and health benefits provided by the plan is governed as follows. . . .Limitations of Actions: You can't bring a legal action against this plan until 60 days from the date you file proof of loss. And you can't bring legal action against this plan *after three years* from the date you file proof of loss" (emphasis added). Id. at Ex. A.

Plaintiff was hired as a secretary by Fitch in or around 1991 and remained in Fitch's employ until March 1999. Id. at Ex. B. Due to a diagnosis of "high-risk pregnancy" in March 1999, Plaintiff stopped working at Fitch under doctors orders. Id.

2

P-049

Fitch paid maternity benefits to Plaintiff for the duration of her pregnancy. Id. Guardian approved benefits through November 30, 1999, approximately six weeks after Plaintiff's delivery date of October 20, 1999. Id. at Ex. N.

On November 23, 1999, Plaintiff informed Guardian of continuing pain in her hips. Id. at Ex. N. After a medical examination performed by Dr. Herzog and submission of medical information, Guardian approved additional benefits through December 15, 1999. Id. at Ex. N. The medical information reported that Plaintiff was experiencing pain in her lateral hip region and extending into the lateral knee. Id. Plaintiff reported the pain had been present since February 1999 and continued beyond her delivery. Id. Upon examination by Dr. L'Insalata, Plaintiff was provided anti-inflammatory medication, therapy and home exercises. Id.

In order to fully evaluate Plaintiff's hip and knee pain, Defendant arranged for an independent medical exam with Dr. Philip Keats ("Dr. Keats"), a Board Certified Orthopedic Surgeon. Id. Dr. Keats examined Plaintiff on February 23, 2000. Based on his review of Plaintiff's previous cervical spine MRIs and his own examination, Dr. Keats reported only diffuse degenerative changes with no herniations or stenosis of the cervical spine and normal examination of the lumbar spine. Id. Dr. Keats ultimately concluded that Plaintiff was capable of returning to full, regular employment. Id.

On April 21, 2000, Defendant informed Plaintiff of its decision that, based on the medical evidence on file, there was no basis to support Plaintiff's claim of inability to

P-049

work and as such, Defendant would cease paying benefits. Id. On May 18, 2000, Dr. Krishne Urs ("Dr. Urs"), notified Defendant that Plaintiff's disability benefits needed to be extended due to the fact that "the MRI of the cervical spine reveals central posterior bulging of the disc with partial encroachment upon C6 and C5 nerve roots…[and] for the time being, she is totally disabled and unable to perform any gainful employment." Id. Defendant forwarded Dr. Urs' letter to Dr. Keats for comment since Dr. Urs' findings were contradictory. Dr. Keats responded that his opinion dated February 23, 2000, in which he found no basis to further extend disability, remained unchanged. Id.

Defendant forwarded a copy of Dr. Keats' report to Dr. Urs and requested a medical rationale for his findings of disability. Id. Dr. Urs replied by restating that Plaintiff was unable to perform any gainful employment, however he failed to provide sufficient medical rationale. Id. Plaintiff's attorney filed an appeal on her behalf with the Plan on June 22, 2000. The appeal did not contain any additional medical evidence in support of Plaintiff's claim. Defendant replied in a letter dated August 17, 2000, in which it stated:

> "Your notice of appeal was filed on behalf of Ms. Nelson-Flood on June 22, 2000. Guardian received this notice of appeal on June 27, 2000. As no additional medical information accompanied your appeal, we reviewed all the information currently on file. Guardian finds no medical evidence that would change the decision as outlined in our letters of April 21, 2000, April 27, 2000, and May 30, 2000. While we acknowledge Ms. Nelson-Flood's reports of pain, no medical evidence has been provided to support a functional impairment that

4

precludes her from performing the material duties of her regular occupation on a full-time basis. Consequently she does not satisfy the terms of the plan and no further benefits are available. *This is Guardian's final position on this matter as Ms. Nelson-Flood has exhausted her administrative remedies under this plan.*" (emphasis added) Id.

On December 21, 2004, more than three years from the date of Defendant's final declination of benefits, Plaintiff's attorney submitted a subsequent request for reconsideration of the disability claim on Plaintiff's behalf. Id. On January 3, 2005 Guardian responded in a letter stating:

> "Guardian's position on this matter is that you have been sufficiently advised of the reasons for our denial determination and you were given ample opportunity to appeal the decision under ERISA legislation. Our last correspondence of August 17, 2000 advised you have exhausted administrative remedies under the Plan." See Def.['s] Reply Mem. of Law at 4.

On November 22, 2005, Plaintiff filed a complaint with the clerk of court in the Eastern District of New York ("E.D.N.Y."). After parties participated in discovery, the instant motion for summary judgment was served on Plaintiff by Defendant on April 13, 2007.

## STANDARD OF REVIEW

"[I]n an action brought under ERISA, the contours guiding the court's disposition of the summary judgment motion are necessarily shaped through the application of the

5

substantive law of ERISA." <u>Ludwig v. NYNEX Service Co.</u>, 838 F.Supp. 769, 780 (S.D.N.Y. 1993). Under Rule 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also <u>Medoy v. Warnaco Employees. Long Term Disability Ins. Plan</u>, No. 97 CV 6612 (SJ) 2005 U.S. Dist. LEXIS 40631 (E.D.N.Y., Dec. 24, 2005), at *8. On motions for summary judgment, it is the moving party who holds the burden of showing "the absence of a genuine issue of material fact, and the district court's task is limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." <u>Id</u>. at 8. (citing <u>Kerzer v. Kingly Mfg.</u>, 156 F.3d 396, 400 (2d. Cir. 1998). When deciding a motion for summary judgment, the Court "must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." <u>Id</u>.

When the movant demonstrates through competent evidence that there are no material facts that are genuinely in dispute, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-movant cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts," <u>Borthwick v. First Georgetown Sec., Inc.</u>, or defeat the motion through "mere speculation or conjecture." 892 F.2d 178, 181 (2d Cir. 1989).

6

P-049

See also Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citations omitted). Furthermore, the existence of disputed facts that are immaterial to the issues at hand is no impediment to summary judgment. See Id. at 11-12.

## DISCUSSION

### I. Plaintiff's Benefit Claim

Defendant now moves to dismiss Plaintiff's claim that Guardian's termination of Plaintiff's benefits breached the terms of the Plan and as such, violated ERISA, 29 U.S.C. Sec 1001-1461 (1982), *et seq.*, on the ground that this claim is time-barred. Defendant argues that, according to the express terms of the benefits plan, legal actions against the Plan must be commenced within three years of filing of proof of loss. According to Defendant, Guardian issued a final denial of benefits on August 17, 2000. As this action was commenced on November 22, 2005, Defendant argues that the claim is barred by the three-year statute of limitations.

Plaintiff contends that this Court should apply the six-year statute of limitations for ERISA actions brought in the state of New York as provided by Rule 213(2) of the New York Civil Practice Law and Rules ("CPLR"). According to Plaintiff, the Defendant's reliance on a shortened statute of limitations period is erroneous because the shortened period is provided in the front of the SPD and not contained within the section of the SPD specifically dedicated to "long-term disability benefits." To determine which statute of limitations this Court must apply, a more detailed analysis is required.

7

P-049

## A. Applicable Statute of Limitations for Benefits Claims Arising from an ERISA Regulated Employee Benefits Plan

As this Court previously noted, ERISA does not provide a limitations period for actions brought under section 502. See Medoy v. Warnaco, *supra* at *10. As such, the applicable statute of limitations period "is that specified in the most closely analogous state limitations statute." Id. *10. See also Miles v. New York State Teamsters Conference Pension Plan, 698 F.2d 593, 598 (2d Cir. 1983).

Based on this principle, the United States Court of Appeals for the Second Circuit ("Second Circuit") has held that the six-year statute of limitations under rule 213 of the New York CPLR is applicable to section 502 claims under ERISA. N.Y. C.P.L.R. 213(2) (2007); See also Miles, 698 F.2d 593, 598. However, section 201 of New York's CPLR permits contracting parties to shorten a statue of limitations period, so long as the shortened period is memorialized in a written agreement between the parties. N.Y. C.P.L.R. 201 (2007). See also Patterson-Priori v. Unum Life Insc. Co. of America 846 F. Supp. 1102, 1105 (E.D.N.Y. 1994).

In the case at bar, the Plan's Certificate of Insurance ("Certificate"), which describes the Plan's coverage and policies in detail and is issued by Fitch to each employee, states that the statute of limitations for bringing legal actions against the Plan is three years after the sixty day period within which written proof of loss must be produced. That is, in effect, three years and sixty days after the loss itself. See Def. Aff.

8

Ex A. As discussed above, Plaintiff contends that the statute of limitations provided in the Certificate is not applicable to long term disability benefits because the limitations provision itself is not contained in the section specific to "Long Term Disability Insurance."

Plaintiff argues that "it is clear under the Table of Contents that Long Term Disability Income Insurance begins on page 36 [of the SPD]. . . .In that section there is no limitation nor any reference to the applicable six (6) year provisions of ERISA." See Pl.['s] Mem. of Law in Opp'n. to Summ. J. ("Pl. Mem."), at 1-2. According to Plaintiff, defense counsel improperly relies on the Accident and Health claims provision which contains the shortened statute of limitations period for the Plan. Plaintiff further argues that "it is unreasonable and inconceivable that a plan participant would go to the Table of Contents looking for an applicable statutory period under the [General Provisions] heading if in fact they were challenging Long Term disability." Id. at 2. However, Plaintiff's counsel undermines this argument by then stating "the [P]lan is absolutely silent on any shortening of the limitations period except for that provision in the accident and health provision," thereby acknowledging that the *only* statute of limitations period provided by the plan is the one provided in the General Provisions section. Id.

In essence, Plaintiff argues that since the shortened statute of limitations period is contained in a separate "General Provisions" section, as opposed to being located in the section specific to "Long Term Disability," it does not apply to the case at bar. We

9

P-049

disagree with this contention as it is counter to basic principles of contract interpretation.

ERISA requires employers to provide their employees a summary form of benefit plans, also known as SPDs. The SPDs are designed to describe circumstances which may result in plan ineligibility, disqualification, or a denial of benefits. See 29 U.S.C. §1022. ERISA contemplates that the SPD will serve as an "employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 110 (2d Cir. 2003). ERISA plans are construed according to federal common law, Masella v. Blue Cross & blue Shield of Conn., Inc., 936 F.2d 98, 107 (2d Cir. 1991), and "where the [contract] language is plain and unambiguous, a court may construe the contract and grant summary judgment." Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002) (citing Brass v. Am. Film. Techs., Inc., 987 F.2d 142, 148 (2d Cir. 1993). "In construing the policy, we look to the language of the policy and other indicia of the intent of the policy's creator." Bradwell v. GAF Corp., 954 F.2d 798, 800 (2d Cir. 1992) "Where there are ambiguities in an ERISA Plan that this Court is reviewing de novo, those ambiguities are construed in favor of the plan beneficiary." Fay at 104. "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire . . . agreement." O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc., 37 F.3d 55, 59 (2d Cir. 1994) (internal quotation marks and citations omitted). "Whether contract language is

P-049

ambiguous is a question of law that is resolved by reference to the contract alone." Id. at 58-59 (internal quotation marks and citations omitted).

In the instant case, the SPD at issue contains a "General Provisions" section, which is the first section of the SPD. Page one of the SPD it states "[a]s used in this booklet: "Accident and Health" means *any* dental, dismemberment, hospital, *long term disability*...insurance provided by this plan" (emphasis added). Def. Aff., Ex. A. From a plain reading of the language, it is clear and unambiguous that the terms "Accident and Health" encompass terms of the Plan related to "Long Term Disability Insurance." The balance of page one and page two are dedicated to the subsection entitled "Accident and Health Claims Provisions which reads:

> "[y]our right to make a claim for *any* accident and health benefits provided by the plan is governed as follows... Limitations of Actions: You can't bring a legal action against this plan until 60 days from the date you file proof of loss. And you can't bring legal action against this plan after three years from the date you file proof of loss." Def. Aff., Ex. A.

From a plain reading of the SPD language, it is clear that the section entitled "General Provisions" is designed to apply to each and every section of the Plan that follows it, including the section entitled "Long Term Disability Income Insurance."[1]

---

[1] Plaintiff's argument to the contrary ignores the fact that the General Provisions section is the *only* section in the SPD that contains a reference to a statute of limitations period. Plaintiff's argument, carried to its logical conclusion, would indicate that the only section of the SPD subject to the shortened limitations period is the General Provisions section – which is the one section of the SPD that does not contain any substantive portions of the Plan itself. This is clearly contradictory to the intent of the Plan's creators.

11

This Court finds that the three-year limitations period found in the SPD is controlling and the six-year limitations period provided in N.Y. C.P.L.R. §201 is inapplicable.

B.     **Accrual of the Benefits Claim**

The Court now addresses the question of when Plaintiff's benefits claim under section 502(a)(1)(B) began to accrue and, accordingly, when the applicable three-year statue of limitations began to run.

As this Court noted in Medoy I, courts in the Second Circuit generally follow the principles laid out in Miles, *supra*, which state that a plaintiff's ERISA cause of action accrues and the limitations period begins to run when the fiduciary has repudiated or denied benefits in a manner that is both clear and made known to the Plan beneficiaries. Medoy v. Warnaco Employees' Long Term Disability Ins. Plan, 43 F. Supp. 2d 303, 306-07 (E.D.N.Y. 1999). See also Mitchell v. Shearson Lehman Bros., No. 97 CV 0526, 1997 U.S. Dist. LEXIS 7323, at *7 (S.D.N.Y. May 27, 1997). This rule of accrual applies even when "a benefit plan prescribes a different accrual date, such as when "the proof of loss [is] required to be furnished," because to hold otherwise would allow an "insurer to simply bury a denial of coverage and wait for the statute of limitations to run." Mitchell, at *8.

As noted above, Defendant issued a letter to Plaintiff on August 17, 2000, which informed the Plaintiff that in spite of her participation in the Plan's appeal process:

> "no medical evidence has been provided to support a functional impairment that precludes [the Plaintiff] from performing the material duties of her regular

12

P-049

occupation on a full-time basis. Consequently, she does not satisfy the terms of the plan and no further benefits are payable. This is Guardian's final position on this matter as [Plaintiff] has exhausted her administrative remedies under this plan." Def. Aff. Ex. N.

The Court finds that this constitutes a repudiation of benefits that is both clear and made known to the beneficiary.

Plaintiff argues that this letter was not a final repudiation because the Plaintiff "received a second review of her claim and received a letter dated January 3, 2005." Pl.['s] Mem. in Opp. to Summ. J., at 2. Contrary to this assertion, the record demonstrates that on December 21, 2004, Plaintiff's attorney submitted a *request* for reconsideration of Plaintiff's denial of benefits. Defendant's response acknowledged Plaintiff's request but clearly answered in the negative by referencing its denial letter dated August 17, 2000 and said "Guardian's position on this matter is that you have been sufficiently advised of the reasons for our denial determination and you were given ample opportunity to appeal the decision under ERISA legislation. Our last correspondence of August 17, 2000 advised you have exhausted administrative remedies under the Plan." See Def. Reply at 4.

Contrary to Plaintiff's assertion that this subsequent notice from Defendant constitutes a second review, the court in Patterson-Priori, *supra* made clear that subsequent correspondence issued in response to a plaintiff's request for an answer does not in and of itself change the outcome. Patterson-Priori at 1108. Given the

P-049

unambiguous and continuous declination of benefits in the January 2005 letter issued by Defendant, this Court finds that this correspondence did not, as asserted by Plaintiff, restart the statue of limitations period. This principle is grounded in the policy that "if the statute of limitations is tolled each time a participant or beneficiary submits new documentation in support of his or her request for reconsideration, plan administrators will simply refuse to review those materials and that would not be in the best interest of either claimants or administrators. Id. at 1109.

## CONCLUSION

This Court finds that the applicable statute of limitations period is that described in the SPD of three years after the filing of proof of loss. Thus, Plaintiff's claim is time barred and Defendant's motion for summary judgment is GRANTED.

SO ORDERED.
DATED: January 11, 2008      s./ SJ
       Brooklyn, New York     Senior U.S.D.J.

P-049